FILED

2008 Jul-11  AM 10:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA


UNITED STATES OF AMERICA,
ex rel., INGRID LAW                                                    PLAINTIFF


V.                                              CIVIL ACTION NO. _____

THOMAS G. SPURLOCK, DAVID MARSHALL,
THE PERFORMANCE GROUP, LLC.,
PERFORMANCE GROUP CULLMAN, LLC,
PERFORMANCE GROUP ALBERTVILLE, LLC,
PERFORMANCE GROUP BIRMINGHAM, LLC,
SPINAL REHAB ASSOCIATES, LLC, ALABAMA
PAIN CONSULTANTS, LLC, FRANCOIS MICHEL BLAUDEAU,
ROBERT R. RILEY, JR., and JOHN DOE DEFENDANTS 1-20

                                                                      DEFENDANTS

**FILED UNDER SEAL**

## COMPLAINT
(JURY TRIAL REQUESTED)

*Qui tam* relator, Ingrid Law, by her undersigned attorneys, hereby alleges as follows:

1.   This is a civil action brought on behalf of the United States of America against

Thomas G. Spurlock ("Spurlock"), The Performance Group, LLC ("Performance Group"),

Performance Group Cullman, LLC ("PG-Cullman"), Performance Group Albertville, LLC ("PG-

Albertville"), Performance Group Birmingham, LLC ("PG-Birmingham")(Performance Group,

PG-Cullman, PG-Albertville, and PG-Birmingham are referred to collectively herein as "the

Performance Group entities"), Spinal Rehab Associates, LLC ("Spinal Rehab"), Alabama Pain

Consultants, LLC ("Alabama Pain"), Francois Blaudeau ("Blaudeau"), and Robert R. Riley, Jr.

("Riley") (collectively referred to as "Defendants") to recover damages and civil penalties under

the False Claims Act, 31 U.S.C. §§ 3729-3732, as amended by the False Claims Act

Amendments of 1986.  Relator Ingrid Law ("Law"), acting on behalf of the United States, brings

this civil action under the *qui tam* provisions of the False Claims Act, as amended in 1986.

### Venue and Jurisdiction

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 31

U.S.C. §§ 3730(b) and 3732(a).

3.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C.

§ 3732(a).  Defendants resided in this district and were doing business in this district at all times

material to this action.  The claims set forth in this Complaint arose, at least in part, in this

district.

### The Parties

4.   *Qui tam* relator Law is a United States citizen and a resident of the State of Alabama

and of this district.  Law was employed by defendant Performance Group, formerly doing

business as Spinal Rehab Associates, from March 18, 2005 until July 31, 2006.

5.   Thomas G. Spurlock is a chiropractor who resides in this district.  Spurlock is an

owner and officer of defendants Performance Group, Alabama Pain, and Spinal Rehab.

6.   David Marshall is a resident of this district and is an owner and officer of defendants

Performance Group, Alabama Pain, and Spinal Rehab.

7.   The Performance Group, LLC ("Performance Group") is an Alabama corporation

with its principal place of business in Birmingham, Alabama.  Performance Group provides

physical therapy services and is reimbursed for those services, at least in part, by the United

States Government.  Performance Group is the parent company of defendants Performance

Group Cullman, Performance Group Albertville, and Performance Group Birmingham.

8. Performance Group Cullman, LLC ("PG-Cullman") is an Alabama corporation with its principal place of business in Cullman, Alabama. PG-Cullman provides physical therapy services and is reimbursed for those services, at least in part, by the United States Government.

9. Performance Group Albertville, LLC ("PG-Albertville") is an Alabama corporation with its principal place of business in Albertville, Alabama. PG-Albertville provides physical therapy services and is reimbursed for those services, at least in part, by the United States Government.

10. Performance Group Birmingham, LLC ("PG-Birmingham") is an Alabama corporation with its principal place of business in Birmingham, Alabama. PG-Birmingham provides physical therapy services and is reimbursed for those services, at least in part, by the United States Government.

11. Spinal Rehab Associates, LLC ("Spinal Rehab") is an Alabama corporation with its principal place of business in Birmingham, Alabama. Spinal Rehab provided physical therapy services during 2005 and 2006 and was reimbursed for those services, at least in part, by the United States Government.

12. Alabama Pain Consultants, LLC ("Alabama Pain") is an Alabama corporation with its principal place of business in Birmingham, Alabama. Alabama Pain provides durable medical equipment and is reimbursed for its products and services, at least in part, by the United States Government.

13. Francois Michel Blaudeau is a gynecologist and lawyer who resides in this district. Blaudeau is an owner and officer of defendant Performance Group.

14. Robert R. Riley, Jr. is a lawyer who resides in this district. Riley is an owner and

3

officer of defendant Performance Group.

15. John Doe defendants 1-20 are Alabama physicians, many of whom reside in this district, who purchased ownership interest in PG-Cullman, PG-Albertville, and PG-Birmingham and referred physical therapy patients to those entities.

### The Law

16. The False Claims Act (FCA) provides in pertinent part that:

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; ... or (7) knowingly makes, uses, or causes to be made or used , a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

> \* \* \*

> is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent is required.

31 U.S.C. § 3729.

17. The Stark Laws (and specifically Stark II which became effective January 1, 1995) ("Stark"), prohibit physicians from referring Medicare, Tricare, or Medicaid patients to an entity

for certain "designated health services", including radiology services, if the referring physician

has a non-exempt "financial relationship," including a "compensation relationship"with such

entity.  42 U.S.C. § 1395(nn)(a)(1), (h)(6).  Stark's prohibition is not limited to situations where

the physician directly refers the patient to a particular entity.  Stark prohibits a physician from

requesting an item or service for a patient which is performed by a provider of a designated

health service with which the physician has a compensation relationship.  Entities and persons,

such as Defendants, may not present or cause to be presented to Medicare, Tricare, or a any state

Medicaid program claims for services furnished pursuant to a prohibited referral, and Stark II

expressly prohibits payments of claims for services rendered in violation of its provisions.  42

U.S.C. § 1395(nn)(a)(1), (g)(1).

## The Medicare Program

18. The United States, through the Department of Health and Human Services ("HHS")

and its component agency, the Center for Medicare and Medicaid Services ("CMS"), administers

Title XVIII of the Social Security Act under 42 U.S.C. §§ 1395, et seq. (Medicare Part B

Program).  The Medicare Part B Program ("Medicare Program") is a 100% federally subsidized

health insurance system for disabled persons or persons over the age of 65.  The Medicare

Program pays for certain specified medically necessary services rendered to patients covered by

Medicare Part B.  Two of the services paid for under Medicare Part B are physical therapy and

durable medical equipment ("DME").  Physical therapy providers are permitted to bill services to

Medicare only after obtaining a prescription for physical therapy from a licensed physician and

only if physical therapy services are provided by a licensed physician or licensed physical

therapist.  DME providers are permitted to bill services to Medicare only after obtaining a

Certificate of Medical Necessity from a licensed physician stating that the equipment provided and billed is necessary for the care of the Medicare patient to whom it is prescribed.

19. Physical therapy and DME providers are required to enter into a contract, or "provider agreement," with HHS in order to participate in the Medicare program.  Under the terms of the provider agreement entered into by all physical therapy and DME providers participating in the Medicare program, providers certify that they will comply with all laws, regulations, and guidance concerning proper practices for Medicare providers.  The compliance of physical therapy and DME providers with their Medicare provider agreements is a condition for participation in, and receipt of payments from, the Medicare program.

## GENERAL ALLEGATIONS

20. During the spring of 2005, defendant Thomas Spurlock, an Alabama chiropractor, contacted relator Ingrid Law about the prospect of Law running a physical therapy clinic Spurlock intended to open in Birmingham.  Law had no experience in the area of physical therapy, and she was at that time operating a business that handled garbage disposal for large events.

21. On March 18, 2005, Law began her employment as manager of defendant Spinal Rehab, a physical therapy clinic owned by defendants Spurlock and Marshall.  From March 18, 2005 until May 2005, Law was the only employee working in the Spinal Rehab offices.

22. Upon hiring Law to work at Spinal Rehab, Spurlock advised Law that it was appropriate for her to provide physical therapy services to the clinic's patients.  Throughout her employment with Spinal Rehab and Performance Group, Law was instructed to provide, and did provide, a variety of physical therapy services despite the fact that she was not a physician, a

6

licensed physical therapist, or a physical therapy assistant. Many of the services performed by Law were billed to Medicare.

23. In September 2005, defendants Spurlock, Marshall, Blaudeau, and Riley formed Performance Group. In January 2006, Spinal Rehab began operating under the Performance Group name.

24. In November 2005, the owners of Performance Group, including defendants Spurlock, Marshall, Blaudeau, and Riley, formed PG-Albertville and PG-Cullman.

25. In February 2006, the owners of Performance Group, including defendants Spurlock, Marshall, Blaudeau, and Riley, formed PG-Birmingham.

26. Defendants Spurlock, Marshall, Blaudeau, and Riley sold ownership interest in the Performance Group entities to John Doe defendants 1-20. John Doe defendants are Alabama physicians who referred patients to the Performance Group entities for physical therapy. John Doe defendants shared in the profits of the Performance Group entities.

27. In addition to owning Spinal Rehab and the Performance Group entities, defendants Spurlock and Marshall also own and operate defendant Alabama Pain Consultants, a durable medical equipment company.

**THE FRAUD SCHEME:**

**<u>Forgery of Physician Signatures</u>**

28. Beginning during or before 2005, defendants Spurlock routinely forged the signatures of physicians on prescriptions for physical therapy services to be provided by Spinal Rehab and Performance Group. In addition, Spurlock forged the signatures of physicians on certificates of medical necessity for medical equipment to be provided by Alabama Pain.

7

29. Beginning during or before 2005, defendant Spurlock, a chiropractor, signed his name as "Thomas Spurlock, M.D." on prescriptions for physical therapy and certificates of medical necessity for medical equipment for the purpose of misleading others regarding his authority to order such items and ultimately have them paid by insurers, including Medicare.

30. Relator has witnessed Spurlock forge the signatures of numerous doctors who practice in and around Birmingham.

31. Many of the claims resulting from Spurlock's forgeries were submitted to Medicare. Had Medicare known that physician signatures were forged, or that Spurlock was not in fact a medical doctor as he represented, Medicare would have denied those claims for payment.

### Billing for Services Not Rendered or Not Medically Necessary

32. Beginning no later than 2005, Spinal Rehab (and later Performance Group, PG-Cullman, PG-Albertville, and PG-Birmingham) routinely billed Medicare for services that were not rendered or were not medically necessary.

33. Many of the physical therapy patients at Spinal Rehab and the Performance Group received an infrared therapy known as Anodyne. Defendant Spurlock instructed employees of Spinal Rehab and the Performance Group entities, including Relator, to bill at least three units of "therapeutic exercise" each time a patient was receiving Anodyne therapy. Rather than being proper "therapeutic exercise" reimbursable by Medicare, patients were told simply to move their hands and feet while connected to the Anodyne machine. Such movement of the hands and feet does not constitute "therapeutic exercise" and is not reimbursable my Medicare.

34. In addition, defendant Spurlock demanded that for each physical therapy patient who received traction the employees of Spinal Rehab and the Performance Group entities also bill for

8

"neuromuscular re-education" despite the fact that no such services were provided to patients. Hundreds of bogus claims for neuromuscular re-education services were submitted to Medicare.

### False Claims for Unnecessary Medical Equipment

35. Beginning in 2005, defendants Spurlock and Marshall instructed employees of Spinal Rehab and the Performance Group entities, including Relator, to provide every patient from those physical therapy clinics with medical equipment from defendant Alabama Pain, a medical equipment company owned by Spurlock and Marshall. Employees were instructed to ensure that each physical therapy patient received a back brace, a transcutaneous electrical nerve stimulator ("TENS unit"), and/or a cervical collar. Pursuant to the instructions of Spurlock and Marshall, these items were to be provided regardless of whether they were medically necessary.

36. As an inducement to carry out this fraudulent scheme, Spurlock and Marshall paid employees bonuses or commissions for each piece of Alabama Pain medical equipment provided to physical therapy patients. Employees received $50 for each back brace, $25 for each TENS unit, and $25 for each cervical collar.

37. As a result of this fraudulent scheme, hundreds of claims were submitted to Medicare for medical equipment that was not medically necessary.

### Prohibited Referrals

38. For the purpose of obtaining referrals of physical therapy patients, Defendants Spurlock, Marshall, Riley, and Blaudeau sold ownership interest in the Performance Group entities to various Alabama physicians, John Doe defendants 1-20.

39. After the John Doe defendants purchased ownership interest in the Performance Group entities, they shared in the profits of the Performance Group entities and referred hundreds

of patients to the Performance Group entities for physical therapy.

40. The Performance Group entities submitted claims to Medicare for physical therapy services provided to the hundreds of patients referred by John Doe Defendants 1-20.  Had Medicare officials known of the prohibited referrals described herein, the claims of the Performance Group entities would have been denied.

41. As a result of the scheme described herein whereby physical therapy patients of the Performance Group entities routinely were provided with medically unnecessary medical equipment provided by defendant Alabama Pain, the referrals from John Doe defendants 1-20 to the Performance Group entities resulted directly in bogus claims to Medicare for medically unnecessary medical equipment provided and billed to Medicare by Alabama Pain.  Had Medicare officials known that all such claims from Alabama Pain resulted from prohibited referrals, the claims of Alabama Pain would have been denied.

### False Billings for Services Provided by Unlicenced Therapist

42. From March 2005 through July 2006, Relator was instructed by defendant Spurlock to provide physical therapy services to patients at Spinal Rehab and Performance Group despite the fact that Relator is not a physician, a licensed physical therapist, or a licensed physical therapy assistant.  Despite Relator's lack of qualifications, Spinal Rehab and Performance Group billed Medicare for the services provided by Relator.

43. Due to Relator's lack of qualifications and training, Spinal Rehab and Performance Group were prohibited from seeking reimbursement from Medicare for services performed by Relator.  Had Medicare officials known that Relator had performed the services billed to Medicare by Spinal Rehab and Performance Group, those claims would not have been paid.

10

## COUNT I

Claim By and on Behalf of the United States under the False Claims Act  (Presenting False Claims)

44.  Plaintiff realleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

45.  This is a claim under the False Claims Act,  31 U.S.C. §§ 3729-33, as amended.

46.  The Plaintiff/Relator, Ingrid Law, has standing to maintain this action by virtue of 31 U.S.C. §3730(b).

47.  By virtue of the acts described herein, Defendants knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)(1), as amended.

48.  By virtue of the false claims presented or caused to be presented by Defendants, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT II

Claim By and on Behalf of the United States under the False Claims Act (False Records or Statements)

49.  Plaintiff realleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

11

50. This is a claim on behalf of the United States under the False Claims Act,

31 U.S.C. §§ 3729-33, as amended.

51. The Plaintiff/Relator, Ingrid Law, has standing to maintain this action by virtue of 31

U.S.C. §3730(b).

52. By virtue of the acts described above and Defendants' use of, or activities causing to

be used, false records and statements to get false and fraudulent claims paid and approved by the

Government, Defendants caused to be made or used false records or statements to get false or

fraudulent claims paid or approved by an agency of the United States Government, in violation of

31 U.S.C. § 3729(a)(2).

53. By virtue of, and as a result of, the false records and statements used to get false

claims paid by the Government, the United States has suffered actual damages and is entitled to

recover three times the amount by which it is damaged, plus civil money penalties of not less

than $5,500 and not more than $11,000 for each of the false claims presented or caused to be

presented, and other monetary relief as appropriate.

### COUNT III

Claim By and on Behalf of the United States under the False Claims Act Relating to
Kickbacks Paid to Sharon Crawford (Conspiracy to Submit False Claims)

54. This is a claim under the False Claims Act,  31 U.S.C. §§ 3729-33, as amended.

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 as though

fully set forth herein.

56. By reason of the foregoing with respect to Defendants' fraudulent scheme,

Defendants conspired together to defraud the government in order to get false or fraudulent

12

claims paid by Medicare, in violation of 31 U.S.C. § 3729(a)(3), as amended.  In furtherance of the conspiracy, Defendants acted to affect the objects of the conspiracy alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States:

1.      On Counts I - III, under the False Claims Act, against Defendants for treble the amount of the United States' actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

2.      For all costs of this civil action; and

3.      For such other and further relief as the Court deems just and equitable.

WHEREFORE, relator Ingrid Law demands and prays that judgment be entered in her favor:

1.      On Counts I - III, under the False Claims Act, for a percentage of all civil penalties and damages obtained from Defendants pursuant to 31 U.S.C. § 3730, reasonable attorney's fees, and all costs incurred against Defendants; and

2.      Such other relief as the Court deems just and proper.

Respectfully submitted,

J. Cliff Johnson II (Mississippi Bar #9383)
J. Brad Pigott

ATTORNEYS FOR RELATOR INGRID LAW

13

Pigott Reeves Johnson, P.A.
775 N. Congress Street
Post Office Box 22725
Jackson, Mississippi 39225-2725
Telephone:  (601) 354-2121
Facsimile: (601) 354-7854

14